Adam M. Kent CA SBN: 270855
Law Office of Adam M. Kent
4455 Morena Blvd., Suite 213
San Diego, CA 92117
T- (619) 892-8422
F- (888) 509-8232
Email: Attorney@AdamKentLegal.com

Attorneys for Plaintiff, Timothy J. Moran

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY J. MORAN, an individual<br><br>Plaintiff,<br><br>v.<br><br>GRAPHPAD SOFTWARE, LLC, dba DOTMATICS, a Delaware Limited Liability Company, SIEMENS INDUSTRY SOFTWARE, INC. a Delaware Corporation and DOES 1-20 inclusive,<br><br>Defendants. | **Civil Case No.:** '26CV2705 JO MMP<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Interference with FMLA Rights<br>2. Retaliation – FMLA<br>3. Interference with CFRA Rights<br>4. Retaliation – CFRA<br>5. Disability Discrimination (Assoc.) – FEHA<br>6. Retaliation – FEHA<br>7. Disability Discrimination (Assoc.) – ADA<br>8. Age Discrimination – FEHA<br>9. Interference with Bereavement Leave<br>10. Wrongful Termination in Violation of Public Policy<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. Plaintiff Timothy J. Moran ("Plaintiff" or "Mr. Moran"), by and through his undersigned counsel, brings this action against Defendant GraphPad Software, LLC, dba Dotmatics ("Defendant" or "Dotmatics") Siemens Industry Software, Inc. ("Siemens"), and DOES 1 through 20 (collectively, "Defendants") for: interference with and retaliation against his exercise of protected leave rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2 et seq.; discrimination and retaliation in violation of the California

Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., based on associational disability; age discrimination in violation of FEHA; interference with protected bereavement leave under Cal. Gov. Code § 12945.7; and wrongful termination in violation of California public policy. Defendants exploited Plaintiff's protected status as primary caregiver to his terminally ill mother to pressure him onto leave, strip him of his position, subject him to an impossible Performance Improvement Plan, and ultimately terminate his employment two days after his mother's death.

## VENUE AND JURISDICTION

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, including the FMLA and the ADA.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims as to form part of the same case or controversy.

4. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b) because Defendant conducts substantial business in this judicial district and the acts and omissions giving rise to this action occurred within this district.

## PARTIES

5. Plaintiff Timothy J. Moran is an individual and at all relevant times was a resident of the State of California.

6. Defendant GraphPad Software, LLC, dba Dotmatics ("Dotmatics"), is a Delaware limited liability company doing business in California, including in the Southern District. At all relevant times, Dotmatics employed Plaintiff and employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite, making it subject to the FMLA, CFRA, ADA, and FEHA.

7. Defendant Siemens Industry Software Inc. ("Siemens") is a Delaware corporation doing business in California and, on information and belief, is the corporate parent, successor, or integrated enterprise of Dotmatics. Siemens exercised control over the employment decisions at issue in this action, including Plaintiff's termination. On information and belief, Siemens and Dotmatics constitute an integrated enterprise and/or joint employer for purposes of liability under the FMLA, CFRA, FEHA, and ADA.

8. Plaintiff is ignorant of the true identity and capacity of Defendants designated as DOES 1 through 20, and will amend the Complaint when their identities have been ascertained according to proof at trial. Plaintiff alleges on information and belief that each DOE Defendant is in some manner responsible for the acts, omissions, and conduct alleged herein and is responsible for the injuries, damages, and harm incurred by Plaintiff Timothy J. Moran. Plaintiff further alleges on information and belief that each such designated Defendant acted as an authorized agent, representative, and associate of the named Defendants in doing the things alleged herein. DOE Defendants include, without limitation, supervisory and managerial employees who participated in the adverse employment actions alleged herein, including but not limited to Melanie Nelson and Fatha Hashi.

## FACTUAL ALLEGATIONS

9. On or about December 8, 2022, Defendant Dotmatics (then operating as Protein Metrics) hired Plaintiff as a Product Manager at an initial annual salary of $168,000, reporting to VP of Product Strategy and Marketing St. John Skilton. Plaintiff was selected in part based on his more than fifteen (15) years of experience in software product leadership roles.

10. Plaintiff quickly excelled at his position. By his first mid-year review, Mr. Skilton noted that Plaintiff was an excellent addition to the team, solidly meeting expectations, and identified him as management material.

11. In October 2023, Plaintiff was assigned to the Adaptive Workflows module on Defendant's flagship product, Luma. By year-end 2023, his manager acknowledged Plaintiff's efforts in meeting demanding deadlines, supporting multiple teams, and pivoting quickly as needed. His annual review reflected that he was solidly meeting expectations, was honest, transparent, and consistently set a good example.

12. Effective January 1, 2024, Plaintiff was promoted to Principal Product Manager for the development of Adaptive Workflows on the Luma Platform. His base salary was increased to $200,000 with a fifteen percent (15%) bonus. The newly appointed Senior Director of Program Management personally advocated for this title and salary increase.

13. Around mid-2024, Plaintiff's mother was diagnosed with terminal cancer. Plaintiff became her primary caregiver while continuing to work long hours, including nights and weekends. Defendants'

management was fully aware of his situation, including Defendant's Chief Product Officer, who personally extended condolences.

14. Plaintiff moved in with his mother to provide full-time care. Despite this significant personal hardship, Plaintiff's work product remained strong, his customers were satisfied with his performance, and he continued to meet or exceed measurable performance targets.

15. After learning of Plaintiff's mother's terminal illness, Plaintiff's new manager, Melanie Nelson, began subjecting Plaintiff to unfair and pretextual criticism. Despite acknowledging his hard work, effective leadership, and an excellent product demonstration for a major client, Merck & Co., Ms. Nelson rated Plaintiff as "building towards expectations" at his mid-year 2024 review, citing distractedness.

16. Months later at his annual review, Ms. Nelson reversed course and faulted Plaintiff for focusing only on Adaptive Workflows rather than the broader Luma platform — precisely the opposite of what she had previously directed him to do. When Plaintiff identified this contradiction, Ms. Nelson acknowledged the error but refused to revise his evaluation, telling him to submit his own comments instead.

17. Ms. Nelson thereafter began blaming Plaintiff for matters outside his job description and beyond his control, including engineering coding decisions. She eventually presented Plaintiff with an ultimatum: either take FMLA/CFRA leave or be placed on a Performance Improvement Plan ("PIP"). Plaintiff requested the PIP so that performance expectations would be clearly documented and so that he could understand where he was alleged to be falling short. Defendants nonetheless pushed him to take FMLA leave, claiming that it would be best for him at that time.

18. When Plaintiff requested intermittent leave or the right to split his leave — rights expressly protected under FMLA and CFRA — both Melanie Nelson and Fatha Hashi, his Human Resources Representative, refused.

19. Ms. Hashi, told Plaintiff that no written job description or expectations were required for someone at his level, and that full use of leave was his best option. Ms. Hashi did not inform Plaintiff of his right to take intermittent leave or provide him a genuine choice regarding the form of his leave. Plaintiff had no meaningful choice and commenced FMLA/CFRA leave on May 5, 2025.

20. As a direct result of Defendants' interference with Plaintiff's right to take intermittent leave, Plaintiff was forced to exhaust his entire twelve (12) weeks of protected leave while his mother was still

alive, leaving him with no protected leave entitlement during her final, critical days of life, the precise period for which he had sought to preserve it.

21. When Plaintiff returned from leave on or about July 28, 2025, Defendants failed to return him to his same or a comparable position as required by law. His prior role as Principal Product Manager for the Adaptive Workflows module had been assigned to his peer, Kieran Barnes. Although Defendants maintained Plaintiff's title and base salary, the responsibilities, duties, and working conditions of his new role were entirely different.

22. Under California Code of Regulations, 2 CCR § 11087(i), "[e]mployment in a comparable position" requires that the position be virtually identical in terms of pay, benefits, working conditions, duties, responsibilities, skill, effort, responsibility, and authority. Plaintiff's post-leave assignment bore no resemblance to this standard.

23. Upon his return, Plaintiff was:

a. barred from communicating with customers, despite customer engagement being a core and essential function of a Product Manager;
b. required to learn SQL coding from scratch with no formal training;
c. tasked with troubleshooting the entire Luma platform, not just the Adaptive Workflows module he had previously managed;
d. required to understand complex entity and data models across numerous databases;
e. directed to create test data for the full Luma platform; and
f. required to write technical JIRA tickets and create experience roadmaps from scratch — duties more consistent with an engineering or QA role than a Principal Product Manager.

24. On the very same day Plaintiff returned from leave, and despite Ms. Nelson's earlier framing of leave as an alternative to a PIP, Defendants immediately placed Plaintiff on a thirty/sixty/ninety-day PIP.

25. Throughout the PIP period, Ms. Nelson provided contradictory, shifting, and impossible feedback designed to ensure Plaintiff's failure. She rejected work product submitted in the format she had previously approved, refused to read complete reports she had requested in favor of outlines, and then rejected outlines in favor of "paragraph sentences." She continuously expanded Plaintiff's duties while moving the goalposts for success.

26. Notably, Ms. Nelson did not issue a review at the thirty-day checkpoint, an omission consistent with an inability to identify legitimate grounds for termination.

27. During the final weeks of the PIP period, Plaintiff's mother's condition became critical. Despite providing around-the-clock care to his dying mother, Plaintiff continued working in excess of fifty (50) hours per week. Ms. Nelson was well aware of his mother's imminent death yet showed no compassion, continuing to send Plaintiff work demands throughout the weekend his mother passed away.

28. Plaintiff's mother died on Sunday, November 2, 2025. Plaintiff took the following Monday, November 3, 2025, off to grieve. On Tuesday, November 4, 2025 — two days after his mother's death — Plaintiff attended a meeting with Ms. Nelson with the specific intention of requesting five (5) days of bereavement leave pursuant to his rights under California Government Code § 12945.7. Before Plaintiff could speak, Ms. Nelson informed him that he could not record the meeting and that his employment was being terminated.

29. Plaintiff was never afforded the opportunity to request or take the bereavement leave to which he was legally entitled. Defendants' decision to terminate his employment two days after his mother's death, in the very meeting he intended to request bereavement leave, constitutes interference with his protected bereavement leave rights and compelling circumstantial evidence of pretext

30. At the time of his termination, Plaintiff was sixty-three (63) years of age. He had intended to remain employed with Defendants through his retirement at age sixty-seven (67). Given the insular and specialized nature of the software product management community, Defendants' conduct has damaged Plaintiff's professional reputation and substantially impaired his ability to find comparable employment, particularly given well-documented age discrimination in the technology sector.

31. On April 24, 2026, Plaintiff requested a Right to Sue letter from the California Civil Rights Department under Case No. 202604-34778224 alleging discrimination and retaliation based on Plaintiff's associational disability, CFRA Leave, Bereavement Leave and age.

32. The following timeline demonstrates that the adverse employment actions against Plaintiff were substantially motivated by his protected characteristics and activities:

a. December 2022 through mid-2024: Plaintiff consistently meets or exceeds performance expectations, receives a promotion and salary increase to $200,000;

b. mid-2024: Plaintiff's mother is diagnosed with terminal cancer; Plaintiff disclosed to management and becomes primary caregiver;

c. mid-2024 onward: Ms. Nelson begins issuing negative and contradictory reviews despite Plaintiff's continued performance;

d. early 2025: Ms. Nelson presents the forced-leave ultimatum;

e. May 5, 2025: Plaintiff compelled to begin FMLA/CFRA leave;

f. July 28, 2025: Plaintiff returns to a materially different position and is immediately placed on a PIP;

g. October–November 2025: Plaintiff's mother enters critical condition; Ms. Nelson continues pinging Plaintiff with work demands during the final weekend of his mother's life;

h. November 2, 2025: Plaintiff's mother dies;

i. November 4, 2025: Plaintiff is terminated two days later, before he can request bereavement leave.

**FIRST CAUSE OF ACTION**

**Interference with FMLA Rights**

**(29 U.S.C. § 2615(a)(1))**

33. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

34. At all relevant times, Defendants were an "employer" within the meaning of the FMLA and Plaintiff was an eligible "employee" entitled to take up to twelve (12) weeks of protected leave per year to care for a parent with a serious health condition.

35. Defendants interfered with Plaintiff's FMLA rights by: (a) pressuring Plaintiff to take leave rather than a PIP, leaving him without a genuine election; (b) denying Plaintiff's lawful request for intermittent leave; (c) requiring Plaintiff to exhaust all leave at once and thereby depriving him of protected leave when he needed it most; and (d) failing to return him to the same or a comparable position upon his return from leave.

36. As a direct and proximate result of Defendants' interference, Plaintiff suffered damages including lost wages, lost benefits, and other economic and non-economic harm.

**SECOND CAUSE OF ACTION**

**Retaliation for Exercise of FMLA Rights**

**(29 U.S.C. § 2615(a)(2))**

37. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

38. Defendants retaliated against Plaintiff for exercising his FMLA rights by placing him on a PIP immediately upon his return, reassigning him to a materially different position with more burdensome and unfamiliar responsibilities, and ultimately terminating his employment.

39. A causal connection exists between Plaintiff's protected leave and his termination, evidenced by the temporal proximity between his return from leave and the adverse employment actions taken against him, the assignment of his original position to another employee during his leave, and the pretextual and contradictory justifications offered by Ms. Nelson throughout the PIP process.

40. As a direct and proximate result, Plaintiff suffered damages including lost wages and benefits, in an amount to be proven at trial, along with liquidated damages available under 29 U.S.C. § 2617.

**THIRD CAUSE OF ACTION**

**Interference with CFRA Rights**

**(Cal. Gov. Code § 12945.2)**

41. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

42. The CFRA provides employees the right to take up to twelve (12) weeks of protected leave to care for a parent with a serious health condition, the right to take such leave on an intermittent basis, and the right to reinstatement to the same or a comparable position upon return. Cal. Gov. Code § 12945.2.

43. Defendants interfered with Plaintiff's CFRA rights by pressuring him to take leave, denying his request for intermittent leave, and failing to reinstate him to the same or a comparable position. Unlike the FMLA, the CFRA does not contain a "key employee" exception—a provision eliminated from CFRA in January 2021.

44. As a direct and proximate result, Plaintiff suffered damages including lost wages, lost benefits, and emotional distress.

//

## FOURTH CAUSE OF ACTION

**Retaliation for Exercise of CFRA Rights**

**(Cal. Gov. Code § 12945.2)**

45. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

46. Defendants retaliated against Plaintiff for exercising his CFRA rights by subjecting him to a sham PIP, fundamentally changing the terms and conditions of his employment upon return, and terminating his employment shortly after his mother's death.

47. As a direct and proximate result, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, and is entitled to attorneys' fees and costs under FEHA. Cal. Gov. Code § 12965(c).

## FIFTH CAUSE OF ACTION

**Disability Discrimination Based on Association – FEHA**

**(Cal. Gov. Code § 12940(a); § 12926(o))**

48. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

49. FEHA prohibits discrimination against an employee because of the employee's known association with a person who has, or is perceived to have, a physical disability. Cal. Gov. Code § 12926(o). Terminal cancer is a qualifying physical disability under FEHA. Defendants were fully aware of Plaintiff's mother's condition.

50. Plaintiff's mother had terminal cancer, a qualifying physical disability. Defendants were fully aware of this condition. Defendants discriminated against Plaintiff, among other ways, under the "distraction" theory of associational disability discrimination in that Defendants perceived Plaintiff as being distracted by and unduly devoted to caring for his terminally ill mother, and took adverse employment actions against him on that basis.

51. Defendants' actions—including the issuance of negative reviews, forced leave, imposition of an impossible PIP, reassignment to a different position, and ultimate termination—were substantially motivated by Plaintiff's association with his terminally ill mother.

52. As a direct and proximate result, Plaintiff suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, humiliation, and damage to his professional reputation.

## SIXTH CAUSE OF ACTION

**Retaliation – FEHA**

**(Cal. Gov. Code § 12940(h))**

53. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

54. Defendants retaliated against Plaintiff for his exercise of protected activity, including his request for intermittent leave, his request for a PIP, and his association with a disabled family member, by subjecting him to adverse employment actions including reassignment, imposition of a sham PIP, and termination.

55. As a direct and proximate result, Plaintiff is entitled to economic and non-economic damages, punitive damages, attorneys' fees, and costs.

## SEVENTH CAUSE OF ACTION

**Disability Discrimination Based on Association – ADA**

**(42 U.S.C. § 12112(b)(4))**

56. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

57. The ADA prohibits discrimination against a qualified individual because of that individual's known relationship or association with a person with a disability. 42 U.S.C. § 12112(b)(4).

58. Plaintiff's mother had terminal cancer, a qualifying disability under the ADA. Defendants knew of this condition and took adverse employment actions against Plaintiff based on his association with his disabled mother.

59. As a direct and proximate result, Plaintiff suffered damages to be proven at trial.

## EIGHTH CAUSE OF ACTION

**Age Discrimination – FEHA**

**(Cal. Gov. Code § 12940(a))**

60. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

61. At the time of his termination, Plaintiff was sixty-three (63) years of age and a member of the protected class of persons forty (40) years of age and older under FEHA.

//

//

62. FEHA prohibits adverse employment actions based on an employee's age. Cal. Gov. Code § 12940(a). Plaintiff was performing his job duties satisfactorily, as confirmed by his documented performance history including promotions and salary increases. Upon his return from leave, his position was occupied by a substantially younger peer, Kieran Barnes, who, under information and belief, is under forty (40). The pretextual nature of Defendants' justifications for the PIP and termination, combined with the reassignment of Plaintiff's role to a younger employee and the well-documented prevalence of age discrimination in the technology sector, support a reasonable inference that Plaintiff's age was a substantial motivating factor in Defendants' adverse employment actions.

63. As a direct and proximate result, Plaintiff has suffered lost wages, lost benefits, emotional distress, and damage to his professional reputation in amounts to be proven at trial, together with attorneys' fees and costs under FEHA.

**NINTH CAUSE OF ACTION**

**Interference with Bereavement Leave Rights**

**(Cal. Gov. Code §12945.7**

64. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

65. Effective January 1, 2023, California Government Code § 12945.7 provides employees at covered employers with the right to take up to five (5) days of bereavement leave upon the death of a qualifying family member, including a parent. Such leave may not be used as a basis for adverse employment action.

66. Plaintiff's mother died on November 2, 2025. Plaintiff took November 3, 2025 off of work and reported the reason to his employer. On November 4, 2025, Plaintiff attended a meeting with the specific intention of requesting his five (5) days of protected bereavement leave. Defendants preempted that request by immediately terminating Plaintiff's employment at the outset of that meeting.

67. Defendants' termination of Plaintiff's employment two days after his mother's death, in the very meeting he intended to invoke his bereavement leave rights, constitutes interference with those rights and retaliation for his anticipated exercise of protected leave. The temporal proximity between his mother's death and his termination is itself compelling evidence of pretext.

//

68. As a direct and proximate result, Plaintiff suffered damages including lost wages, emotional distress, and is entitled to all remedies available under FEHA, including attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)

69. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

70. California law prohibits an employer from terminating an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision. *Tameny v. Atlantic Richfield Co*. (1980) 27 Cal.3d 167. The public policies underlying the CFRA, FMLA, ADA, FEHA, and the California Labor Code (including the bereavement leave statute), are fundamental, substantial, and well-established public policies of the State of California and the United States.

71. Defendants terminated Plaintiff's employment in violation of these fundamental public policies, including: the public policy against discriminating and retaliating against employees who take protected family medical leave; the public policy against discriminating against employees based on their association with a disabled family member; the public policy against age discrimination in employment; and the public policy protecting an employee's right to take bereavement leave following the death of a parent.

72. As a direct and proximate result of this wrongful termination, Plaintiff suffered and continues to suffer economic damages, emotional distress, humiliation, and damage to his professional reputation. Because Defendants' conduct was willful, oppressive, and malicious, Plaintiff is entitled to punitive damages in addition to compensatory damages.

//

//

//

//

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Timothy J. Moran respectfully requests that this Court enter judgment in his favor and against Defendant GraphPad Software, LLC, dba Dotmatics, and Siemens Industry Software, Inc. and award Plaintiff the following relief:

a. All economic damages including lost wages, lost benefits, lost bonus and equity compensation and front pay, in an amount to be determined at trial;

b. Non-economic damages for emotional distress, pain and suffering, and loss of enjoyment of life;

c. Liquidated damages under the FMLA equal to the amount of lost and future wages awarded, pursuant to 29 U.S.C. § 2617;

d. Punitive and exemplary damages;

e. Statutory penalties under applicable law;

f. Reasonable attorneys' fees and costs of suit;

g. Pre- and post-judgment interest; and

h. Such other and further relief as the Court deems just and proper.

Dated:04/28/2026

LAW OFFICE OF ADAM M. KENT

ADAM M. KENT
Attorney for Plaintiff, Timothy J. Moran

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable as of right.

Dated:04/28/2026

LAW OFFICE OF ADAM M. KENT

ADAM M. KENT
Attorney for Plaintiff, Timothy J. Moran